524 So.2d 90 (1988)
Winona Ann Foster MUSSELMAN
v.
Robert J. MUSSELMAN.
No. CA 8881.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
H. Craig Cabral, Cabral & Cabral, Metairie, for appellant.
Philip R. Riegel, Jr., Parlongue and Riegel, New Orleans, for appellee.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
Plaintiff, Winona Musselman and defendant, Robert Musselman, each appeal from a judgment of the district court which awarded Mrs. Musselman permanent alimony of $795.90 per month. We affirm the judgment of the district court.
The parties were married January 22, 1961 and had one child of their marriage. A judgment of divorce was rendered on December 15, 1983 at which time the issue *91 of fault was pretermitted. On July 10, 1986 the trial court found both parties to be free from fault and entitled to alimony. That judgment was affirmed by this Court. Musselman v. Musselman, 508 So.2d 122 (La.App., 4th Cir., 1987). The parties agreed to an alimony payment of $1,500 per month. On September 9, 1986 Dr. Musselman filed a rule to terminate and/or reduce permanent alimony. A hearing on this rule was conducted on October 21, 1986, and on November 13, 1986, judgment was rendered fixing permanent alimony payable to Mrs. Musselman at $795.90 per month retroactive to the date of the filing of the rule. The judgment also awarded Mrs. Musselman unpaid support payments of $6,790.35 with interest from the date each payment was due. The court rendered reasons for judgment which state, in pertinent part:
Winona Musselman is presently gainfully employed and receives a gross monthly pay of $758.33 and a net take home pay of $646.11. She asserts total monthly expenses of $2,322.00. The Court finds that some of the expenses which Winona Musselman claims are not "necessary" as that term applies to permanent alimony. To her, the expenses may be necessary; but in law they are luxuries. Nevertheless, the Court concludes that her income (exclusive of alimony payments) is insufficient to cover her necessities at present. Permanent alimony is indicated.
Under the facts of this case, the Court determines that Winona Musselman's present earnings should be used to reduce the former support figure of $1,500.00 per month, and, accordingly, the Court will reduce alimony payments to $795.90 per month ($1,500.00 minus 92.85% 1 of $758.33). _______ 1 F.I.C.A. taxes are 7.15%. The 92.85% figure is the difference.
On appeal Dr. Musselman contends that the award of permanent alimony was in error as his former wife is no longer in necessitous circumstances. In support of his position Dr. Musselman argues that his former wife is gainfully employed, earning $758.33 per month; has "substantial assets"; and has the earning capacity sufficient to meet her basic needs. Mrs. Musselman contends that the trial court's award of permanent alimony of $795.00 per month was inadequate, because she demonstrated monthly expenses of $2,000 per month. She further alleges that the trial judge erred in calculating the amount of the award as he merely reduced her former monthly payment of $1,500 per month by the amount of her current monthly earnings.
Louisiana Civil Code Article 160 controls the award of alimony after divorce:
Art. 160. When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
In determining whether the claimant is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries.
In this case Dr. Musselman seeks to eliminate alimony or in the alternative, to reduce *92 the amount paid. Mrs. Musselman desires that the amount of alimony being paid by the defendant be maintained.
In cases such as this, the party seeking alimony has the burden of proving necessitous circumstances or insufficient means for their maintenance. Vorisek v. Vorisek, 423 So.2d 758 (La.App., 4th Cir., 1982). "Means" includes income and capital. Vorisek v. Vorisek, supra.
The wife's earnings, as well as her earning capacity, are proper considerations in awarding alimony. Vorisek v. Vorisek, supra; See: Teasdel v. Teasdel, 454 So.2d 886, (La.App., 4th Cir., 1984).
In this case the record reflects the following factors regarding the financial status of the parties:
Mrs. Musselman has a bachelor's degree and has worked towards a master's in English. She stated that she was unable to complete these studies because of financial reasons. Plaintiff did not work during the twenty years of her marriage. Following the dissolution of the marriage, Mrs. Musselman made numerous attempts at securing employment, but she was unsuccessful. She finally was able to obtain work as a secretary with a local synagogue. She works 30 hours a week earning $758.33 gross pay and net income of $646.11 monthly. As a part time employee she receives no work benefits such as health insurance or pension membership. She testified that even after securing this position she applied, on at least three occasions, for full time employment but she was rejected. Mrs. Musselman testified that her home was fully paid for since she used funds derived from her community property settlement to purchase her current home. She stated that she paid $250 per month maintenance which figure she based on the upkeep of the community residence. She testified that she owned her automobile which was 11 years old. She did not use the vehicle daily to go to work because she was able to walk there. She testified that she spent $230 a month for gasoline and maintenance of the vehicle.
Mrs. Musselman claims $300.00 per month for food, however she concedes that this figure includes an amount for pet food. She also stated that she spends $40.00 per month for cleaning supplies, $61 per month for house insurance, $55 per month for her telephone, which includes long distance calls, and $213 for natural gas. She concedes that the figure for natural gas was an estimate based on her prior residence. She did not have central heat. With regard to her personal expenses, plaintiff lists $75 per month clothing, $45 per month for dry cleaning and laundry, $80 per month for personal grooming and $126 medical insurance. She also includes $574 for miscellaneous expenses such as pet care, travel, gifts, magazines, etc.
Dr. Robert Musselman is a professor of pediatric dentistry at L.S.U. Dental School. He earns a gross salary of $80,000 with a net income of $60,877.28. The combined gross salary of Dr. Musselman and his current wife is $106,229. Dr. Musselman testified that he has a monthly house note on his new residence of $940.00 per month. He has a monthly car note of $480.00 on his new Acura vehicle. In addition, he spends $190.00 per month for auto insurance for himself and his wife and $150.00 per month on the operation of his vehicle. He incurs food expenses for himself of $300.00 per month, $100.00 per month entertainment expense plus a home improvement payment of $334.00 per month.
Our review of the record convinces us that the trial judge correctly concluded that plaintiff does not have sufficient means for her support and is entitled to permanent alimony.
In arriving at this conclusion he correctly took into consideration the actual earnings of the plaintiff.
Although earning capacity is a factor to be considered in awarding permanent alimony, in this case, it was not such a factor as would negate the award. That is, the plaintiff demonstrated that her specific and repeated attempts to secure a better paying job had been unsuccessful.
Moreover, the trial judge apparently found that Mrs. Musselman's ownership of a personal residence was not such "means" as would defeat alimony. We agree.
*93 In Vorisek v. Vorisek, supra at 763 we considered this issue:
A wife will not be required to sell her home and deplete the proceeds of the sale in order to be entitled to alimony. Sonfield v. Deluca, 385 So.2d 232 (La., 1980); Loyacano v. Loyacano, supra [358 So.2d 304 (La., 1978)]; Super v. Super, supra [397 So.2d 1084 (La.App., 4th Cir., 1981) ].
* * * * * *
That is, only when large sums are tied up in extravagant housing will the continued possession of the home be considered sufficient means to defeat alimony. Kean v. Kean, supra [388 So.2d] at 400 [(La.App., 1st Cir., 1980)].
In this case a personal residence of $75,000 is not "extravagant housing", the continued possession of which will negate an award of support.
Although the trial court's decision to award plaintiff permanent alimony was correct, its method of calculation was in error. The trial court awarded the sum of $795.00 per month, which was the difference between the prior stipulated alimony payment and the plaintiff's current earnings. This approach fails to take into consideration the essential factors ennumerated in Civil Code Article 160 and it also ignores the evidence presented of the current needs and means of the parties.
We have considered the evidence presented and we agree with the trial court that some of the plaintiff's claimed expenses are not "necessary" at that term applies to permanent alimony. Excluding these items from consideration and considering the remaining needs and means of the parties, we cannot say that an award of $795.00 per month in this case is clearly wrong.
For these reasons the judgment of the trial court is affirmed at the cost of the defendant.
AFFIRMED.